

```
UNITED STATES DISTRICT COURT
    DISTRICT OF SOUTH DAKOTA
        CENTRAL DIVISION
```

| | | |
|---|---|---|
| JESSICA HORNBY, | * | 09-03032-RAL |
| Plaintiff, | * | |
| -vs- | * | OPINION AND ORDER |
| | * | GRANTING |
| | * | SUMMARY JUDGMENT |
| TIM REISCH, Secretary, South Dakota Department of Corrections; BRENDA HYDE, Warden, South Dakota Women's Prison, | * | |
| Defendants. | * | |

Plaintiff Jessica Hornby ("Hornby") is an inmate at the South Dakota Women's Prison ("SDWP"). On December 8, 2009, Hornby filed a Complaint against Secretary of the South Dakota Department of Corrections Tim Reisch and SDWP Warden Brenda Hyde. The Complaint alleges that, while Hornby was incarcerated at SDWP, the Defendants denied Hornby prescription medications and failed to follow specific recommendations from Hornby's personal physician. Hornby sought preliminary and permanent injunctive relief, as well as general and punitive damages.

The Defendants answered, denying many of Hornby's allegations. On August 13, 2010, Defendants filed a Motion for Summary Judgment, Defendant's Statement of Undisputed Material Facts, and a brief in support of Motion for Summary Judgment (Doc. 21, 22, and 23). Hornby did not file any response to Defendants' Motion for Summary Judgment within the 21 calendar days permitted for response under Local Rule 7.1(B) of the Civil Local Rules of Practice of the United States District Court for the District of South Dakota ("Civil Local Rules"). On September 16, 2010, this Court entered an Order directing Plaintiff to respond to Motion for Summary Judgment (Doc. 28). This Order stated:

> On August 13, 2010, Defendants filed a Motion for Summary Judgment, Statement of Undisputed Material Facts, Brief, and supporting affidavits. Local Rule 7.1(B) allows a party opposing a motion 21 calendar days within which to file a

1

> response. Local Rule 56.1(B) requires that a party opposing a motion for summary judgment "shall respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." Local Rule 56.1(B) further requires that the party opposing summary judgment "shall identify any material facts as to which it is contended that there exists a genuine material issue to be tried." Further, under Local Rule 56(C), all relevant evidence for or against a motion for summary judgment is to be attached to an affidavit. Under Local Rule 56(D), all facts set forth in movant's statement of material facts will be deemed admitted unless controverted.
>
> Plaintiff is proceeding pro se and may not have been aware of these local rules. Therefore, it is
>
> ORDERED that Plaintiff has until October 1, 2010, within which to file any response to Defendants' Motion for Summary Judgment, Statement of Undisputed Material Facts, Brief, and supporting affidavits.

(Doc. 28). Notwithstanding the Order of the Court, Hornby, as of the date of this Opinion and Order Granting Summary Judgment, still has not filed any response to Defendant's Motion for Summary Judgment, Statement of Undisputed Material Facts, brief, or support affidavits.

The deadline of October 1, 2010, has passed without any response to the summary judgment papers. Under Civil Local Rule 56.1(D), "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts." Because Hornby has not responded to the motion for summary judgment or statement of material facts submitted in connection therewith, the Court deems the statement of material facts to be admitted pursuant to Civil Local Rule 56.1(D).

## I. Material Facts

Medical health services at SDWP are provided by on-staff personnel employed by Department of Health Correctional Health Care and contract physicians. (Doc. 22 at ¶¶ 2,4). Warden Hyde and Secretary Reisch are not involved with treatment decisions, and staff may make referrals as they deem appropriate in their clinical judgment. (Id.).

A licensed health professional screened Hornby upon her arrival at SDWP – an accepted

practice within the medical community. (Doc. 22 at ¶¶ 3-7). At the time of admission, Hornby did not mention that she had prescriptions for Protonix or Reglan, did not provide to SDWP specific written instructions for her medical care from any of her personal physicians, and did not complain about having any trouble with stomach pain, nausea or vomiting. (Doc. 22 at ¶¶ 7-8).

Hornby did advise SDWP staff at in-take that she had previously suffered from Rumination Syndrome, which is a condition where stomach contents are regurgitated undigested back into the mouth. (Doc. 22 at ¶ 8). Based on this report, SDWP obtained the medical records from Mayo Clinic where Hornby previously had been treated. (Doc. 22 at ¶ 9). The records revealed that she received a diagnosis of Rumination Syndrome, but there was no prescription for Protonix or Reglan issued by Mayo Clinic and her last treatment there was in May of 2005. (Id.).

Throughout her stay at SWDP, Hornby had many contacts with Correctional Health Care. During a period from May 8, 2008, to February 17, 2010, she made 27 health care visits to Correctional Health Care. (Doc. 22 at ¶ 10). During this time she was seen by the physician's assistants nine times and was seen 18 times by contract physicians Dr. Buron Lindbloom and Dr. Brent Lindbloom, both of whom are licenced physicians in South Dakota. (Doc. 22 at ¶¶ 10-11). She was also seen by licensed nurses at Correctional Health Care on 25 occasions. (Doc. 22 at ¶ 10).

On May 10, 2009, Hornby for the first time made a request to be placed on Protonix and Reglan. (Doc. 22 at ¶ 15). The request was made to registered nurse Anna Belkham and documented by her Nursing Assessment contained within the South Dakota Correctional Health Services records. (Doc. 22 at ¶ 12). Hornby was advised that Prilosec was the same type of prescription as Reglan and that this was available to her (Id.). Hornby refused to take the Prilosec. (Id.).

Following her assessment of Hornby, Nurse Belkham referred Hornby to Dr. Buron Lindbloom for his review of Hornby's problems. (Doc. 22 at ¶ 13). Hornby saw Dr. Buron Lindbloom on May 15, 2009. According to the doctor's notes, Hornby was treated for constipation and Irritable Bowel Syndrome, placed on a stool softener, and advised to drink plenty of water and prune juice. (Doc. 22 at ¶ 14).

The treatment Hornby received at SDWP for her stomach and abdominal problems related to issues of constipation and/or diet. (Doc. 22 at ¶ 19). Hornby never asked either Dr. Brent Lindbloom or Dr. Buron Lindbloom to be placed on Protonix or Reglan, and according to the doctor's medical records, nothing suggested Hornby should be placed on these prescriptions. (Doc. 22 at ¶ 16).

The May 10, 2009 Nursing Assessment was the first time anyone at SDWP was made aware of Hornby's request for such medications. (Doc. 22 at ¶ 15). The medical charts of Correctional Health Services contain no specific written recommendations for Hornby's medical care and treatment from any of Hornby's personal physicians. (Doc. 22 at ¶ 17). There are no prescriptions for Reglan or Protonix written by Hornby's personal physicians in her medical file at SDWP. (Doc. 22 at ¶ 18).

During her stay at SDWP, Hornby was given diet orders by Correctional Health Care on several occasions for bland diets and no onions. On at least two occasions she refused to comply with the diet orders – December 18, 2008 and August 11, 2009. (Doc. 22 at ¶ 21).

While incarcerated at SDWP, Hornby has received appropriate health services and was never denied appropriate services or appropriate prescription medication. (Doc. 22 at ¶ 20). Hornby is still incarcerated at SDWP at this time.

## II. Discussion

### A. The Eleventh Amendment Bars the Claimed Money Damages.

The Eleventh Amendment to the United States Constitution bars actions against states and state officials in their official capacity. Alden v. Maine, 527 U.S. 706, 756-57 (1999); Cory v. White, 457 U.S. 85, 91 (1982); Ford Motor Co. v. Indiana Dep't of the Treasury, 323 U.S. 459, 462 (1944) (overruled on other grounds). Where, as here, a plaintiff makes no designation as to the capacity in which a state official is named, the Court presumes that they are sued in their official capacity. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995). Because Hornby has not designated that Secretary Reisch and Warden Hyde are sued in their individual capacity, Egerdahl mandates that they be treated as being in their official capacity. Id. As such, the Eleventh Amendment bars Hornby's claims against them for money damages. Alden, 527

4

U.S. at 756-57. They are therefore entitled to summary judgment on all claims for money damages.

**B. Qualified Immunity of Reisch and Hyde Bars the Claim.**

The Supreme Court of the United States has developed a two-part test for the application of qualified immunity in the context of a 42 U.S.C. § 1983 claim. The threshold question is whether, when viewing the facts in the light most favorable to the plaintiff, the official's conduct has violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If a right has been violated, the question becomes whether the right was clearly established at the time of the violation and within the specific context of the case. Id., see also Pearson v. Callahan, 129 Sup. Ct. 808 (2009) (overruling Saucier v. Katz to the extent that it *requires* a court to make a determination that a constitutional right has been violated *prior to* determining if the right is clearly established). The dispositive question under the second prong is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Unless Hornby overcomes both of these hurdles, qualified immunity protects these Defendants from suit.

The Eighth Amendment bars prison officials from engaging in acts or omissions that demonstrate deliberate indifference to serious medical needs. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). In order for a claim of deliberate indifference to be successful, a plaintiff must demonstrate both (1) that she suffered from a serious medical need, and (2) that prison official knew of, but deliberately disregarded that need. Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009).

The Eighth Circuit has defined a "serious medical need" as "one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Jones v. Minnesota Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008). However, "nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment," and inmates "do not have a constitutional right to any particular type of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

5

For plaintiff to establish that she suffered from a serious medical need, the relevant inquiry is "not whether the [disease] itself is a serious medical need, but rather whether [the inmate] has a serious medical need for prompt . . . treatment." Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004). Based on the undisputed facts, Hornby cannot establish a serious medical need for Protonix or Reglan. There are no prescriptions for these medications in her SDWP file, no specific written recommendations from her physicians for her treatment for SDWP to follow, and no basis for her to be placed on the medications according to doctors treating her at SDWP. (Doc. 22 at ¶¶ 16, 17, and 18).

The undisputed material facts fail to demonstrate that SDWP knew of, but deliberately disregarded, any serious medical need of Hornby. To succeed on a deliberate indifference claim, Hornby must "show more than negligence, more even than gross negligence." Jolly, 205 F.3d at 1096 (citing Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)); see also Vaughn, 557 F.3d at 908 ("In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness . . .") (internal quotations omitted). The mere fact that Hornby disagrees with certain medical treatment decisions "does not rise to the level of a constitutional violation." Jolly, 205 F.3d at 1096 (citing Rosenberg, 56 F.3d at 37).

In deciding a similar issue, a Missouri district court determined that prison officials did not act with deliberate indifference in treating an inmate for Hepatitis C where he requested a certain type of treatment and the prison doctors refused, instead using an alternative method. Holloway v. Corr. Med. Servs., No. 06-1235, 2010 U.S. Dist LEXIS 21437 (E.D. Mo. Mar. 9, 2010). As in Holloway, the medical staff here actively participated in plaintiff's treatment by providing alternative treatment options including Prilosec, and alternative diet options designed to assist her with her stomach problems. The treatment was not what Hornby desired or requested, and Hornby at times refused recommended treatments. However, that does not make SDWP's conduct rise to the level of deliberate indifference for her medical need.

Further, Warden Hyde and Secretary Reisch are not involved in treatment decisions. (Doc. 22 at ¶ 2). In accordance with accepted practice within medical communities, SDWP has a

system in place to screen all inmates upon arrival at the SDWP for health issues with licensed health professionals and to treat them appropriately without limitation by Reisch or Hyde. (Id.).

Hornby received appropriate health services. (Doc. 22 at ¶ 20). There is no evidence that Reisch and Hyde actually intended Hornby to be harmed, knew she would be harmed, or recklessly disregarded a known and excessive risk to her health, as would be required to show deliberate indifference.

Even if Hornby somehow had not received appropriate services, Reisch and Hyde did not violate the Eighth Amendment. As the Supreme Court stated in Farmer v. Brennan, 511 U.S. 825 (1994), "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838. In this case, Hornby was placed into a system that administered appropriate health services. (Doc. 22 at ¶¶ 2-20). After being screened at SDWP, Hornby had fairly regular contact with Correctional Health Care. In fact, over the course of 21 months, she made 27 visits to Correctional Health Care, was seen by a physician's assistant nine times, was seen in by licensed contract physicians 18 times, and was seen by licensed nurses 25 times. (Doc. 22 at ¶ 10). Hornby was placed on a diet for her stomach problems on several occasions and refused to comply with the treatment orders. (Doc. 22 at ¶ 21). Overall, Hornby has received and was never denied appropriate health services. (Doc. 22 at ¶ 20).

In this case, the health professionals learned of Hornby's request to be placed upon Protonix and Reglan on May 10, 2009, approximately one year after her placement at SDWP. (Doc. 22 at ¶ 15). At the time, Nurse Belkham believed that Hornby ought to be on a different medication, but Hornby objected. (Doc. 22 at ¶ 12). Hornby was referred to Dr. Buron Lindbloom, who determined that Hornby was suffering from constipation and Irritable Bowel Syndrome, placed her on a stool softener, and advised her to drink plenty of water and prune juice. (Doc. 22 at ¶ 16). This treatment does not amount to a violation of the Eighth Amendment or deliberate indifference under any standard.

The undisputed facts demonstrate that neither Reisch nor Hyde, nor anyone at SDWP or Correctional Health Care, had any knowledge of specific written recommendations for Hornby's

medical care and treatment from any of her personal physicians. (Doc. 22 at ¶ 17.) Hornby apparently did not have current or valid prescriptions for Protonix or Reglan and none of the records obtained by the SDWP from Hornby's personal physicians had specific written recommendations for prescriptions to Protonix or Reglan. (Doc. 22 at ¶¶ 7, 9, 17, and 18). Further, nothing within her progress notes suggested to Defendants that she should be placed upon Protonix or Reglan. (Doc. 22 at ¶ 16). Hyde and Reisch are therefore entitled to summary judgment.

### III. Order

Therefore, it is

ORDERED as follows:

1. Defendants' Motion for Summary Judgment (Doc. 21) is granted.

2. Judgment hereby enters under Rules 54 and 56 of the Federal Rules of Civil Procedure.

3. Defendants shall be entitled to recover all taxable costs in the amount of $_____, which are to be taxed by the Clerk of Court as provided by law.

Dated this 21st of October, 2010.

BY THE COURT:

/s/ *Roberto A. Lange*
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE